NOT FOR PUBLICATION                                                    (Doc. No. 4)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                                      :
ANDREW J. INCORVATI and BRENDA      :
INCORVATI,                                             :
                                                      :
                   Plaintiffs,                        :        Civil No. 10-1939 (RBK/KMW)
                                                      :
            v.                                        :        **OPINION**
                                                      :
BEST BUY CO., INC., BEST BUY              :
STORES, L.P., and HASSAN AYOUBI,     :
                                                      :
                   Defendants.                      :
_____    :

**KUGLER**, United States District Judge:

This matter arises out of alleged employment discrimination at a Best Buy service center.

Presently before the Court is the motion of Defendants Best Buy Co., Inc. and Best Buy Stores,

L.P. (collectively "Defendants"), and Mr. Hassan Ayoubi ("Defendant Ayoubi") to dismiss

claims brought by Andrew Incorvati ("Plaintiff") and Brenda Incorvati.  The Complaint alleges

violations of both the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 et

seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. 10:5-1 et seq.

Specifically, the Complaint alleges retaliation in violation of the FMLA and a variety of NJLAD

claims.  Additionally, Brenda Incorvati brought a claim for loss of consortium in connection with

her husband's NJLAD claims.  For the reasons expressed below, Defendants' motion is granted

with respect to Plaintiff's NJLAD retaliation, perceived discrimination, aider and abettor, and

hostile work environment claims, and Brenda Incorvati's loss of consortium claim.  However,

Defendants' motion is denied with respect to Plaintiff's FMLA retaliation claim and NJLAD age

discrimination claim.

## I.      BACKGROUND

Plaintiff, a forty-eight year-old male, began working at Best Buy in Baltimore, Maryland on or about January 2005.  Initially, he worked as a Service Manager at the service center. Eventually, Plaintiff was transferred from the Baltimore service center to the service center in Perth Amboy, New Jersey and awarded the position of Television Service Manager.  Plaintiff alleges that during his employment with Best Buy he worked full-time and performed all of his duties completely and satisfactorily.

On or about December 20, 2008, Plaintiff suffered from a heart attack.  As a result of this condition, Plaintiff did not work for a period of four weeks.  During the four-week period of Plaintiff's absence, Best Buy assigned another employee, Mr. Bahader, to the position of Television Service Manager.  The Complaint alleges that Mr. Bahader was in his early to mid-twenties.  (Compl., at ¶ 26).

Plaintiff's troubles began when he returned to Best Buy after recovering from the heart attack.  First, Plaintiff alleges that after he returned to work, Mr. Bahader remained in the position of Television Service Manager, and retained all of his job-related responsibilities.  Next, Plaintiff alleges that for the remainder of his employment with Best Buy, his supervisors provided him with significantly less job support and gradually transferred his responsibilities to Mr. Bahader.  Finally, he alleges that Defendants terminated his right to use the company vehicle.

In addition to the aforementioned acts, Plaintiff alleges that after his return to duty, Mr. Bahader began to ridicule him.  Specifically, the Complaint alleges that Mr. Bahader "ridiculed [Plaintiff] due to his age and because he had suffered a heart attack."  (Id. at ¶ 22).  Plaintiff also alleges that on one occasion, Mr. Bahader sent him an email which contained a picture of a

wheel chair or motorized scooter "in an effort to mock his age and physical condition."  (Id. at ¶ 22).  The Complaint alleges that although Plaintiff reported Mr. Bahader's conduct to "supervisors, including defendant Ayoubi," and requested remedial action, Plaintiff's supervisors failed to take remedial action.

On or about April 15, 2009, Plaintiff was discharged from his position with Best Buy, and replaced by Mr. Bahader.  Plaintiff alleges that after returning from disability leave, he was never restored to the position he held prior to taking leave or given the same level of responsibility he held prior to the heart attack.  The Complaint also alleges that Plaintiff's supervisors fraudulently prepared documents in order to create a nondiscriminatory reason for discharging him, and to conceal the actual reasons for terminating his employment.

## II.    STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950.  Importantly, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

## III.  DISCUSSION

### A.  Plaintiff's FMLA Claim

Plaintiff claims that Defendants discriminated against him in violation of the FMLA.  A plaintiff may bring a cause of action for discrimination under the FMLA based on two distinct theories.  First, a plaintiff may bring an FMLA claim based upon an "interference" theory.  Under this theory, it is unlawful for "an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" rights afforded by the Act.  29 U.S.C. § 2615(a)(1).  Second, a plaintiff may bring a claim for unlawful retaliation.  Retaliation claims are analyzed under the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).[1] See Parker v. Verizon Pennsylvania, Inc., 309 Fed Appx. 551, 554 (3d Cir. 2009) ("We apply the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to discrimination and retaliation claims under the . . . FMLA.").  In order to make a prima facie case of retaliation, the plaintiff must prove:  (1) she took FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision

---

[1] Under the framework established in McDonnell Douglas, in order to analyze a Title VII unlawful discrimination claim, the court must apply a three-step analysis.  First, the complainant "must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." McDonnell Douglas, 411 U.S. at 802.  Once the plaintiff makes this showing, the burden then shifts to the employer, and it must offer a legitimate, nondiscriminatory reason for the adverse employment action. Id.  If the defendant employer can make a showing of a legitimate, nondiscriminatory reason for the adverse employment action, then the plaintiff must prove that the employer's proffered reasons were a mere pretext for unlawful discrimination. Id. at 804-805.

was casually related to her leave.  Lepore v. Lanvision Sys., Inc., 113 Fed. Appx. 449, 453 (3d Cir. 2004) (citing Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004)); Allia v. Target Corp., No. 07-4130, 2010 WL 1050043, at *10 (D.N.J. Mar. 17, 2010)).

Regarding the third element of a prima facie case, courts have developed a variety of factors that raise an inference of causation.  First, the temporal proximity alone may give rise to the inference of causation.  "When a causal connection relies on temporal proximity alone, courts generally require that the termination occur within a few days of the protected activity.  Rooks v. Alloy Surfaces Co., Inc., No. 09-839, 2010 WL 2697304, at *2 (E.D. Pa. July 06, 2010) (citing Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)).  However, "[w]here the temporal proximity is not 'unusually suggestive,'" courts generally examine the record to determine whether "the proffered evidence, looked at as a whole, may suffice to raise the inference [of causation]."  LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007). For example, a plaintiff can establish causation by alleging antagonistic conduct or animus by the employer during the intervening period between the protected activity and the adverse employment activity, and inconsistent reasons proffered by the employer for the plaintiff's discharge.  See Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) ("Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof [of causation], such as actual antagonistic conduct or animus against the employee"); Treaster v. Conestoga Wood Specialties Corp., No. 09-00632, 2010 WL 2606479, at *21 (M.D. Pa. Apr. 29, 2010) (same); and Marra, 497 F.3d at 302 (stating that a plaintiff may show causation by alleging "inconsistent reasons given by the employer for terminating the employee . . . .").

The parties do not dispute that Plaintiff took FMLA leave, or, that the termination of Plaintiff's employment is an adverse action.  However, the parties disagree about whether the Complaint alleges facts sufficient to warrant the inference that the termination of Plaintiff's employment was causally related to his FMLA leave.[2]  The Complaint alleges that upon his return to work from FMLA leave, Plaintiff was:  (1) "stripped of his use of a company vehicle"; (2) given less job support and fewer responsibilities; and (3) eventually terminated.  (Compl., at ¶¶ 20-24).  The Complaint also alleges that Plaintiff's supervisors "fraudulently prepared documents to support a non-discriminatory reason to terminate Plaintiff and to conceal the real reason(s) for his termination."  (Id. at 27).  Defendants argue that Plaintiff fails to allege causation because:  (1) the temporal proximity between Plaintiff's return to duty and his eventual termination does not warrant an inference of causation; and (2) Plaintiff failed to allege the reasons Defendants offered for his termination, or, that those reasons were a mere pretext for unlawful discrimination.

This Court finds that Defendants' antagonistic conduct against Plaintiff during the period between Plaintiff's FMLA leave and discharge warrants an inference of causation.[3]  The

---

[2] In Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135 (3d Cir. 2004), the Third Circuit established that an employee may bring a claim for retaliation under the FMLA if the employee is discharged for merely taking FMLA leave.  Acknowledging that "retaliation for taking an FMLA leave does not come within the literal scope of" Section 2615(a) or (b), the court nonetheless adopted the Ninth Circuit's position that the Court may predicate liability on section 2615(a), which "makes it unlawful to interfere with, restrain or deny any FMLA right."  Id. at 147.

[3] The temporal relationship between Plaintiff's discharge and his report does not give rise to the inference that his report was the cause of his discharge.  Generally, "[w]hen a causal connection relies on temporal proximity alone, courts generally require that the termination occur within a few days of the protected activity."  Rooks, 2010 WL 2697304, at *2 (citing Jalil, 873 F.2d at 708).  Here, the time between Plaintiff's return to duty and his discharge weigh against an inference that his discharge was in any way related to his FMLA leave.  The Complaint alleges that Plaintiff returned to work between January 15 and January 20, 2009.  (Compl., at ¶ 17).  The Complaint also alleges that Plaintiff was terminated on April 15, 2009 – approximately three months later.  (Id. at ¶ 14).  This is simply insufficient to support an inference that Plaintiff was terminated because he took FMLA leave.  See e.g. Jalil, 873 F.2d at 708; Whitman v. Proconex, Inc., No. 08-2667, 2009 WL 141847, at *10-12 (E.D. Pa. Jan. 20, 2009) (holding that discharge within minutes of the plaintiff's return to work was "unduly suggestive of a causal link between [the plaintiff's] FMLA leave and her termination); Reinhart, 2006 WL 4050695, at *10-11 (finding causal connection

6

allegations of antagonistic conduct in the Complaint give rise to an inference that Defendants terminated Plaintiff's employment because he took FMLA leave.  The Complaint alleges that when Plaintiff returned to duty his supervisors:  (1) provided him with significantly less job support, (2) transferred his job/responsibilities to Mr. Bahader, and (3) stripped him of use of the company vehicle.  Taken in the aggregate, these allegations give rise to a reasonable inference that Plaintiff's decision to take FMLA leave was causally connected to Defendants' decision to discharge him.  See LeBoon, 503 F.3d at 232 ("Where the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference [of causation].'").

Moreover, the fact that Plaintiff complained of Mr. Bahader's conduct and his supervisors failed to take remedial action further supports the inference that Plaintiff's discharge was causally related to his FMLA leave.  As the Third Circuit held in Glass v. Philadelphia Elec. Co., 34 F.3d 188 (3d Cir. 1994), "an atmosphere of condoned . . . harassment in a workplace increases the likelihood of retaliation for complaints in individual cases."  Id. at 195 (quoting Hawkins v. Hennepin Technical Ctr., 900 F.2d 153, 156 (8th Cir. 1990)).  Here, the fact that Plaintiff reported Mr. Bahader's allegedly unlawful conduct to his supervisors, and they failed to take appropriate action, supports the inference that they also initiated retaliatory action against Plaintiff.  Coupled with the fact that Defendants significantly reduced Plaintiff's duties and gave them to Mr. Bahader, these allegations support a reasonable inference that Defendant unlawfully retaliated against Plaintiff.  See Woodson v. Scott Paper Co., 109 F.3d 913, 923 (3d Cir. 1997) (finding that "evidence of condoned harassment can support an inference by the fact-finder that the employee, having failed to respond to the harassment, also engaged in retaliatory conduct

between the plaintiff's FMLA leave and adverse employment decision when employer terminated the plaintiff's employment a mere twenty-four hours after she returned to duty).

against the plaintiff.").  Therefore, because Plaintiff alleged facts sufficient to support a reasonable inference that Defendant retaliated against him, Defendant's motion to dismiss Plaintiff's FMLA claim is denied.

### B.  Plaintiff's Perceived Disability Discrimination Claim Under the NJLAD

 Defendants argue that Plaintiff's perceived disability claim fails because Plaintiff failed to plead facts sufficient to raise the reasonable inference that Defendant's misperceived the existence, severity, or nature of his heart attack.  Specifically, Defendants contend that Plaintiff did not identify the individual who misperceived his disability, the "disability" he was perceived to suffer from, or whether the unnamed individual who misperceived his disability was at all involved in the decision to discharge him.  Plaintiff argues that his claim should proceed because after he returned from FMLA leave he performed his job "competently and satisfactorily," but was given less responsibility, replaced by Mr. Bahader, and eventually terminated.  On these facts, Plaintiff argues, the Court may draw the reasonable inference that Defendant's misperceived Plaintiff's disability.

To construe the substantive and procedural standards established under the NJLAD, the New Jersey Supreme Court frequently looks to the U.S. Supreme Court's analysis of discrimination claims under Title VII of the Civil Rights Act of 1964.  See Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 452 (N.J. 1993) (citing Grigoletti v. Ortho Pharm. Corp., 570 A.2d 903, 906-907 (N.J. 1990)) ("In construing the terms of the LAD, this Court has frequently looked to federal precedent governing Title VII of the Civil Rights Act of 1964.").  Under the NJLAD, to establish a prima facie case of discriminatory discharge on the basis of disability, a plaintiff must show that:  "(1) he is disabled or perceived to have a disability; (2) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the

employer; (3) he was fired; and (4) the employer sought someone else to perform the same work." Muller v. Exxon Research & Eng'g. Co., 786 A.2d 143, 148 (N.J. Super. Ct. App. Div. 2001)) (citing Clowes v. Terminix Int'l, Inc., 538 A.2d 794, 805 (1988)).  In order to demonstrate that a plaintiff is "perceived to have" a disability, the plaintiff must show that the employer "entertain[ed] misperceptions about the [plaintiff], either believing that the individual has a substantially limiting impairment that he or she does not have or that the individual has a substantially limiting impairment when, in fact, the impairment is not as limiting as the employer believes." Eckhaus v. Consol. Rail Corp., No. 00-5748, 2003 WL 23205042, at *9 (D.N.J. Dec. 24, 2003) (citing Sutton v. United Air Lines Inc., 527 U.S. 471, 487 (1999)).  "Even an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability." Dean v. Pocono Med. Ctr., 142 F.3d 138, 144 (3d Cir. 1998).

Plaintiff's claim of disability discrimination under the NJLAD fails because Plaintiff does not allege that he was disabled after he returned from FMLA leave, or, that any employee or supervisor at Best Buy mistakenly believed that he was disabled.  First, there is no evidence, however, that Plaintiff was disabled after he returned to duty.  Second, although the Complaint alleges that Defendants terminated his use of the company car, gave him less support generally, and transferred some of his duties to Mr. Bahader, the Complaint fails to allege that any of the employees who made these decisions mistakenly believed that he was disabled.  In fact, the Complaint fails to allege any of the names or identities of the "supervisors" who allegedly misperceived Plaintiff's disability.  Instead, the Complaint alleges generally that "Defendants and/or defendants' agents and supervisory employees willfully and intentionally discriminated against Plaintiff because of his perceived handicap." (Compl., at ¶ 39).  Moreover, the

Complaint fails to allege what disability Defendants mistakenly believed Plaintiff possessed when he returned from FMLA leave.  The Complaint merely alleges that Defendant suffered from a heart attack and returned to duty in January.  These threadbare allegations fail to provide a basis for a "plausible" claim for relief.

Third, although Plaintiff alleges that he was teased and mistreated by Mr. Bahader, the Complaint is devoid of any allegation that Mr. Bahader mistakenly believed that he was disabled. The Complaint merely alleges that Mr. Bahader frequently teased him about his age and the fact that he suffered a heart attack, and that Defendants knew that Plaintiff took FMLA leave. However, the mere fact that Mr. Bahader ridiculed Plaintiff about the fact that he previously suffered a heart attack does not establish that Mr. Bahader misperceived that Plaintiff suffered from a substantially limiting impairment.  These allegations alone fail to raise a reasonable inference that Defendants, including Mr. Bahader, mistakenly believed that Plaintiff was disabled.  As the U.S. Supreme Court held in Iqbal, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to demonstrate a plausible claim for relief.  Iqbal, 129 S. Ct. at 1949.  Instead a plaintiff must, "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Therefore, because Plaintiff failed to allege facts sufficient to raise the inference that Mr. Bahader, or any other Best Buy employee, mistakenly believed that he was disabled, Plaintiff's NJLAD perceived disability claim is dismissed.

### C.  Plaintiff's Age Discrimination Claim Under the NJLAD

Plaintiff argues that his age discrimination claim should not be dismissed because the Complaint alleges all of the elements of a prima facie case of age discrimination under the LAD, namely, that:  (1) he was between the ages of forty and seventy at the time his employment was

terminated; (2) he was clearly qualified for the position of Television Service Manager at the time he was discharged, and performed this function competently and satisfactorily; and (3) he was replaced by an individual in his early to mid twenties and outside of the protected class. (Pl.'s Br. In Opp'n to Def.'s Motion to Dismiss the Compl., at 16-17).  Defendant argues that Plaintiff offered no evidence to support his allegation that he was discharged because of his age. Additionally, Defendant argues that:  (1) Plaintiff made no factual allegations regarding Defendants' reasons for his termination, (2) Plaintiff failed to alleged that "the proffered reasons [were] a pretext for age discrimination," and (3) Plaintiff made no factual allegations concerning "the temporal proximity between the conduct that resulted in his termination and his termination."  (Def.'s Motion to Dismiss Compl., at 15-17).

In order to assert a prima facie case of age discrimination under the NJLAD, a plaintiff must show that:  (1) she was a member of a protected group; (2) her job performance met the "employer's legitimate expectations"; (3) she was terminated; and (4) the employer replaced, or sought to replace, her.  Zive v. Stanley Roberts, Inc., 867 A.2d 1133, 1141 (N.J. 2005); Clowes v. Terminix Int'l, Inc., 538 A.2d 794, 805 (1988).  In age discrimination cases, the fourth element "require[s] a showing that the plaintiff was replaced with 'a candidate sufficiently younger to permit an inference of age discrimination.'"  Bergen Commercial Bank v. Sisler, 723 A.2d 944, 957 (N.J. 1999) (citing Kelly v. Bally's Grand, Inc., 667 A.2d 355, 359 (N.J. Super. Ct. App. Div. 1995) (quoting Waldron v. SL Indus., Inc., 849 F. Supp. 996, 1001 (D.N.J. 1994)).  Once a plaintiff establishes a prima facie case, "the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action."  Zive, 867 A.2d at 1140.  If the employer provides a legitimate, nondiscriminatory reason for the action, the burden then shifts back to the plaintiff to demonstrate that "the reason articulated by the

employer was merely a pretext for discrimination and not the true reason for the employment decision." Id.

The Court finds that the Complaint alleges facts sufficient to constitute a "plausible" claim of age discrimination under the NJLAD.  First, the Complaint alleges that Plaintiff was forty-eight years old at the time his employment with Best Buy was terminated.  (Compl., at ¶ 25).  Consequently, he was a member of a protected class under the NJLAD at the time he was discharged.  Cf. Bergen, 723 A.2d at 957 (holding that "the LAD's prohibition against age discrimination is broad enough to accommodate [a twenty-three year old plaintiff's] claim of age discrimination based on youth.")  Second, according to Plaintiff, he performed his job "competently and satisfactorily" during the disputed period.  (Id. ¶ 16).  Because a Plaintiff need only allege that he was performing his job prior to the termination, Plaintiff satisfies the second element of a prima facie case.  See Zive, 867 A.2d at 1143 (stating that "[a]ll that is necessary is that the plaintiff produce evidence showing that she was actually performing the job prior to the termination . . . to support the conclusion that plaintiff's claim of discrimination is plausible enough to warrant promotion to the next step of the McDonnell Douglas test.").  Third, Plaintiff's employment was terminated on April 15, 2009.  Fourth, the Complaint alleges that Defendants filled Plaintiff's position with an employee in his "mid twenties."  (Compl., at ¶ 26).  Therefore, because Plaintiff alleged facts sufficient to satisfy each element of a prima facie case of age discrimination under the NJLAD, Defendant's motion to dismiss is denied.

Defendants' arguments are unpersuasive.  First, although Defendants argue that Plaintiff's claim fails because he does not allege that Defendants took any adverse action "because of" Plaintiff's age, Defendants offer no support for the proposition that a Plaintiff must offer evidence of causation to survive a motion to dismiss.  In fact, the law is contrary.  The

fourth prong of a prima facie case of discrimination requires only that Plaintiff prove Defendants replaced him, or sought to replace him, with a candidate "sufficiently younger." See Bergen, 723 A.2d at 957.  The Plaintiff alleged that he was forty-eight years old at the time Defendant terminated his employment, and that his replacement, Mr. Bahader, was in his "mid twenties." (Compl., at ¶¶ 25, 26).  These allegations suffice to make a "plausible" claim that Plaintiff was replaced by an employee sufficiently younger.  Defendants' second argument fails because Defendant offers no support for the proposition that Plaintiff must plead Defendants' nondiscriminatory reasons for discharging him at the motion to dismiss stage of this litigation. Furthermore, Plaintiff has not pled any of Defendants' nondiscriminatory reasons for terminating his employment.  Therefore, Defendants cannot state whether those reasons were a mere pretext for unlawful discrimination.  Because Plaintiff alleged facts sufficient to make a "plausible" prima facie case of age discrimination under the NJLAD, Defendants' motion is denied.

### D.  Plaintiff's Retaliation Claim Under the NJLAD

To establish a prima facie case of retaliation under the LAD, a plaintiff must show that: (1) she was in a protected class; (2) she was engaged in protected activity known to the employer; (3) she was thereafter subjected to an adverse employment consequence; and (4) there is a causal link between the protected activity and the adverse employment consequence.  Victor v. State of New Jersey, 4 A.3d 126, 141 (N.J. 2010).

The parties do not contest that Plaintiff was engaged in a protected activity when he informed his supervisors and Defendant Ayoubi of Mr. Bahader's allegedly discriminatory remarks.  See N.J. Stat. A. 10:12(d) (providing that "[i]t shall be an unlawful employment practice . . . [f]or any person to take reprisals against any person because that person . . . filed a complaint, testified or assisted in any proceeding under this act . . . .").  Moreover, Plaintiff's

discharge is clearly an adverse employment action.  See N.J. Stat. A. 10:12(a) ("It shall be . . .

unlawful discrimination:  For an employer, because of . . . age, . . . to discharge . . . [an]

individual . . . .").  However, the parties disagree about whether Plaintiff pled causation with the

requisite level of specificity to survive a motion to dismiss.  Defendant argues that the Complaint

fails to allege facts sufficient to support an inference of causation.  Specifically, Defendant

argues that Plaintiff fails to allege:  (1) when he complained to his supervisors; (2) whether he

complained verbally or in writing; (3) whether the individuals who made the decision to

discharge Plaintiff were aware of his allegedly "protected activity"; and (4) whether Plaintiff's

discussion with his supervisors specifically put them on notice that his complaints concerned age

discrimination and perceived disability discrimination.  (Def.'s Mem. of Law in Supp. of Mot. to

Dismiss Compl., at 20).  Plaintiff argues that the allegations in the Complaint raise an inference

of causation.  In particular, Plaintiff argues that:  (1) he reported to his supervisors that Mr.

Bahader ridiculed him due to his age and perceived handicap; (2) he was terminated as a result of

the report; and (3) his supervisors fraudulently prepared documents to support a legitimate

reasons for his discharge.  (Pl.'s Br. In Opp'n to Def.'s Mot. to Dismiss the Compl., at 19).

The Court finds that Plaintiff failed to plead causation with requisite specificity.  Here,

Plaintiff makes only the conclusory allegation that "Defendants took adverse employment action

against Plaintiff, including terminating his employment, because Plaintiff opposed and reported

the discriminatory and harassing conduct of his co-workers."  (Compl., at ¶ 49).  However,

Plaintiff fails to allege facts sufficient to demonstrate that his discharge was causally related to

his report.  As previously mentioned, a plaintiff may demonstrate causation by showing:  (1) a

close temporal relationship between his report and discharge, or (2) that "the proffered evidence,

looked at as a whole, . . . raise[s] the inference [of causation].'"  LeBoon, 503 F.3d at 232.

Moreover, courts have identified various forms of evidence that give rise to an inference of causation such as inconsistent reasons offered by an employer for termination and antagonistic conduct or animus by the employer during the intervening period between the protected activity and the adverse employment activity.  Marra, 497 F.3d at 302 ("[C]ourts may look to the intervening period for demonstrative proof [of causation], such as actual antagonistic conduct or animus against the employee, . . . or . . . inconsistent reasons given by the employer for terminating the employee . . . that give rise to an inference of causation."); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000) (citing Waddell v. Small Tube Prod., Inc., 799 F.2d 69, 73 (3d Cir. 1986)) ("[A] plaintiff may establish the [causal] connection by showing that the employer gave inconsistent reasons for terminating the employee.").

The temporal proximity between Plaintiff's report to his supervisors and his subsequent discharge does not support an inference of causation.  As previously mentioned, "when a causal connection relies on temporal proximity alone, courts generally require that the termination occur within a few days of the protected activity."  Rooks, 2010 WL 2697304, at *2 (citing Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)).  The Complaint alleges that Plaintiff suffered from a heart attack on approximately December 20, 2008 and took four weeks of FMLA leave. (Compl., at ¶¶ 17, 24).  After returning to duty, Plaintiff was discharged on April 15, 2009. Thus, a period of approximately three months elapsed between Plaintiff's return and his discharge.  This period is insufficient to create an inference that Plaintiff's discharge was causally connected to his FMLA leave.

Moreover, the facts alleged in the Complaint, taken as a whole, fail to support an inference of causation.  First, because Plaintiff fails to allege any of Defendant's allegedly nondiscriminatory reasons for terminating his employment, Plaintiff cannot argue that they were

inconsistent.[4]  Second, Plaintiff does not allege specifically <u>when</u> he informed Defendant Ayoubi or his supervisors of Mr. Bahader's allegedly antagonistic conduct.  The Complaint merely alleges that during some point between Plaintiff's return from FMLA leave and his discharge, he "advised/informed his supervisors, including Defendant Ayoubi, of Bahader's reprehensible and unlawful conduct . . . ."  (<u>Id.</u> at 23).  As a result of this omission, it is impossible for the Court to determine whether Defendants directed any antagonistic conduct or animus towards Plaintiff during the intervening period between Plaintiff's report and his discharge.  Therefore, because the Complaint fails to allege sufficient facts to give rise to the reasonable inference that Plaintiff's discharge was causally connected to his report to his supervisors, Plaintiff fails to state a claim for retaliation under the NJLAD.

### E.  Plaintiff's Hostile Work Environment Claim

Plaintiff argues that his hostile work environment claim is plausible because one of his coworkers ridiculed him on numerous occasions because of his age and his heart attack, and sent him a "degrading and offensive" email.  (Pl.s Br. in Opp'n to Def.'s Mot. to Dismiss the Compl., at 22).  Based on these allegations, the fact that Mr. Bahader allegedly held a "supervisory" position over Plaintiff, and the fact that Defendants failed to take appropriate remedial action, Plaintiff argues that Defendants fostered a hostile work environment.  Defendants respond that Mr. Bahader's single email is not severe or pervasive conduct that alters the conditions of Plaintiff's employment as a matter of law.

To state a hostile work environment claim under the NJLAD, a plaintiff must show that the complained-of conduct:  "(1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4)

---

[4] Plaintiff pleads generally that "[his] supervisors fraudulently prepared documents to support a non-discriminatory reason to terminate [him] and to conceal the real reason(s) for his termination."  (Compl., at ¶ 27).

the conditions of employment have been altered and that the working environment is hostile or abusive." Shepherd v. Hunterdon Dev. Ctr., 803 A.2d 611, 625 (N.J. 2002) (citing Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 453 (N.J. 1993)). Within the framework of a prima facie case, "a court cannot determine what 'severe or pervasive' conduct is without considering whether a reasonable person would believe that the conditions of employment have been altered and that the working environment is hostile." Id. As a result, the second, third, and fourth prongs are interdependent. Id.

Whether conduct is "severe or pervasive" is often a close question. In some instances, words alone, spoken publicly, may give rise to a plausible hostile work environment claim. See Taylor v. Metzger, 706 A.2d 685, 696 (N.J. 1998) (finding that a jury could reasonably find that sheriff calling African-American officer a "jungle bunny" on one occasion is "extreme or outrageous"); Leonard v. Metro. Life Ins. Co., 723 A.2d 1007 (N.J. Super. Ct. App. Div. 1999) (holding that a reasonable jury could conclude that defendant's statement to diabetic plaintiff "get your diabetic ass out of here before you die in my office," and "I don't give a f--- about you being diabetic and having low blood sugar," constituted severe or pervasive conduct); Woods-Pirozzi v. Nabisco Foods, 675 A.2d 684, 270-71 (N.J. Super. Ct. App. Div. 1996) (finding that jury question existed when plaintiff alleged that supervisor said "you're a woman and a pain in my ass" frequently, called plaintiff a "loser" about "once or twice a week," and said "you're so emotional, it must be PMS time" about "twice a month"). Significantly, when determining whether mere words are "severe or pervasive," the relevant inquiry is whether the complained-of conduct is severe or pervasive, not whether the effect on the plaintiff or on the work environment is severe or pervasive. Lehmann, 626 A.2d at 454.

However, when determining whether an employer's conduct alters the conditions of the plaintiff's employment and creates a hostile or abusive environment, the Court must be mindful that the NJLAD "is not a guideline for workplace civility." O'Brien v. Int'l Bus. Mach., Inc., No. 06-4864, 2009 WL 806541, at *29 (D.N.J. Mar. 27, 2009) (citing McDonough v. Cooksey, No. 05-cv-00135, 2007 WL 1456202, at *8 (D.N.J. 2007) (citing Herman v. Coastal Corp., 791 A.2d 238, 250 (N.J. Super. Ct. App. Div. 2002)). Thus, "offensive comments or jokes are not enough to state a claim for discrimination." Id. Furthermore, the NJLAD does not guarantee employees a "perfect workplace, free of annoyances and colleagues [they] find[] disagreeable." Lynch v. New Deal Delivery Serv., 974 F. Supp. 441, 442 (D.N.J. 1997). Thus, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). As the U.S. Supreme Court stated in Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993), "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances," which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a merely offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23 (emphasis added).

Here, even assuming arguendo that Defendant's conduct would not have occurred "but-for" Plaintiff's protected status as a forty-eight year-old employee, Plaintiff fails to allege facts sufficient to show that Defendants' conduct altered the conditions of Plaintiff's work environment and created a hostile and abusive environment. The Complaint alleges that on "numerous occasions," Mr. Bahader "ridiculed Plaintiff due to his age and because he had suffered a heart attack," and that on one occasion, Mr. Bahader sent Plaintiff an email

"containing a picture of a wheel chair/motorized scooter in an effort to mock his age and physical condition." (Compl., at ¶ 22). These allegations alone fail to state a plausible claim for relief. First, Plaintiff's general allegation that Mr. Bahader ridiculed him on "numerous occasions," without more, fails to put Defendants on notice of the specific conduct that gives rise to Plaintiff's hostile work environment claim. Moreover, the bald assertion that Mr. Bahader "ridiculed" Plaintiff does not provide a factual basis for Plaintiff's assertion that Defendants' conduct altered the conditions of his employment and created a hostile or abusive environment. Second, the isolated incident of harassment alleged in the Complaint falls short of the type of conduct that gives rise to a hostile work environment claim. As previously mentioned, a single incident of harassment may rise to the level of "severe" conduct. Taylor, 706 A.2d at 689; Torres v. Pisano, 116 F.3d 625, 631 n.4 (2d Cir. 1997) ("Of course, even a single episode of harassment, if severe enough, can establish a hostile work environment."), cert. denied, 552 U.S. 997 (1997). However, "it will be a rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable [person situated as the claimant], make the working environment hostile." Id. at 689 (citing Lehmann, 626 A.2d at 455). While one may infer that an email containing an image of a wheelchair implies that the sender sought to ridicule the recipient's age or disability, the mere depiction of a wheelchair in an email is not the type of severe conduct that alters the conditions of one's employment or creates an abusive environment.[5] Because Plaintiff failed to allege facts sufficient to show a "plausible" hostile work environment claim, Plaintiff's hostile work environment claim is dismissed.

---

[5] For examples of conduct that is so severe that one isolated incident gives rise to the inference of a hostile work environment, see Taylor, 706 A.2d 685 (finding that employer calling a Plaintiff a "jungle bunny" on one occasion gave rise to the inference that employer's work environment was severe or pervasive); and Reid v. O'Leary, No. 96-401, 1996 WL 411494, at * 1,4 (D.D.C. July 15, 1996) (finding that African-American plaintiff stated a hostile work environment claim under Title VII when she alleged that she found a framed certificate in her drawer which stated "Temporary Coon Ass Certificate" on one occasion).

### F.  Brenda Incorvati's Loss of Consortium Claim

Plaintiff Brenda Incorvati asserts a claim for loss of consortium.  Defendants argue, and this Court agrees, that Brenda Incorvati's loss of consortium claim fails because neither the New Jersey Supreme Court nor the Third Circuit Court of Appeals recognizes a loss of consortium claim by the spouse of a claimant in an employment discrimination case.  (Def.'s Mem. of Law in Supp. of Mot. to Dismiss Compl., at 23);  See Brennan v. Palmieri, No. 07-4364, 2008 WL 2355203, at *5 (D.N.J. Jun. 4, 2008) (holding that "neither the Third Circuit nor the New Jersey Supreme Court has recognized a spouse's claim for loss of consortium under § 1983, § 1985, § 1986 or under the New Jersey Civil Rights Act"); Acevedo v. Monsignor Donovan High Sch., 420 F. Supp. 2d 337, 342 (D.N.J. 2006) ("[a] claimant's right to recover under an employment discrimination statute does not support a loss of consortium claim by the claimant's spouse."); Herman v. Coastal Corp., 791 A.2d 238, 255 (N.J. Super. Ct. App. Div. 2002) ("Plaintiff's husband cannot maintain a claim for loss of consortium because such a claim based on the LAD is not recognized in this State.").  Therefore, Brenda Incorvati's loss of consortium claim is dismissed.

### G.  Whether Mr. Ayoubi is Liable as an Aider or Abettor Under the NJLAD

Plaintiff asserts a claim for aider/abettor liability against Defendant Ayoubi.  Plaintiff argues that Defendant Ayoubi substantially assisted Mr. Bahader and the other unnamed employees who allegedly ridiculed Plaintiff due to his age or disability.  (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss the Compl., at 25).  To support this argument, Plaintiff alleges that Defendant Ayoubi failed to take any remedial measures after learning that Plaintiff was "ridiculed, mocked and insulted," but instead remained "deliberately indifferent to the harassment taking place . . . ."  (Id. at 25-26).  Defendants argue that Plaintiff's claim fails

because the Complaint does not allege that Defendant Ayoubi provided "substantial assistance" to Mr. Bahader or the employees who ridiculed Plaintiff.  Specifically, Defendants contend that the Complaint "fails to plead, generally or specifically, any of the elements of aiding and abetting liability under the LAD."  (Def.'s Mem. of Law in Supp. of Mot. to Dismiss Compl., at 28).

The NJLAD provides for individual liability against employees by making it unlawful for "any person . . . to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [by the LAD], or to attempt to do so."  N.J. Stat. Ann. § 10:5-12(e).  To be liable as an aider or abettor, "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and <u>substantially assist</u> the principal violation."  <u>Coulson v. Town of Kearny</u>, No. 07-5893, 2010 WL 331347, at *5 (D.N.J. Jan. 19, 2010) (emphasis added) (citing <u>Tarr v. Ciasulli</u>, 853 A.2d 921, 929 (N.J. 2004)).  In order to determine whether an employee "substantially assisted" the principal in committing a wrongful act, the New Jersey Supreme Court adopted the test set forth in Section 876(b) of the Restatement (Second) of Torts.  <u>Tarr</u>, 853 A.2d at 929 (citing Restatement (Second) of Torts § 876(b) (1979)).  The comments to Section 876 provide a list of five factors New Jersey courts use to determine whether a defendant provides "substantial assistance" to the principal.  The five factors include:  "(1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor."  <u>Id.</u>  (citing Restatement (Second) of Torts § 876(b) cmt. d; <u>Hurley v. Atl. City Police Dep't</u>, 174 F.3d 95, 129 (3d Cir. 1999)).

The Court finds that Plaintiff fails to state a plausible claim of aider and abettor liability against Defendant Ayoubi, because the Complaint fails to allege facts sufficient to raise a reasonable inference that Defendant Ayoubi substantially assisted Mr. Bahader's allegedly unlawful conduct.  The only form of discrimination for which Plaintiff states a viable cause of action is age discrimination under the NJLAD.  Therefore, the relevant inquiry is whether Defendant Ayoubi aided or abetted Mr. Bahader when he made discriminatory remarks about Plaintiff's age.  Applying the five factors outlined in the Restatement, it becomes clear that Plaintiff failed to allege facts sufficient to give rise to a plausible claim of aider or abettor liability under the NJLAD because the Complaint fails to allege facts sufficient to raise the inference that Defendant Ayoubi <u>substantially assisted</u> Mr. Bahader.  There is no evidence that (1) Mr. Ayoubi encouraged any of Mr. Bahader's allegedly wrongful conduct, (2) assisted Mr. Bahader in any discernable way, (3) was present when Mr. Bahader allegedly ridiculed Plaintiff or sent Plaintiff the allegedly discriminatory email, (4) worked with Mr. Bahader, or (5) intended to aid or abet Mr. Bahader in any way.  Even drawing all inferences in the light most favorable to Plaintiff, the Complaint merely alleges that Plaintiff notified Defendant Ayoubi of Mr. Bahader's allegedly wrongful conduct, and Defendant Ayoubi failed to take appropriate action.  These allegations fall short of a plausible claim of aider or abettor liability under the NJLAD. Therefore, because Plaintiff failed to allege facts sufficient to warrant a reasonable inference that Defendant Ayoubi "substantially assisted" Mr. Bahader's allegedly wrongful conduct, Plaintiff fails to state a claim of aider and abettor liability under the NJLAD.

### H.  Plaintiff's Punitive Damages Claim

Finally, the parties dispute whether a cognizable claim exists for punitive damages under the NJLAD.  Defendants argue that Plaintiff's "claim" for punitive damages should be dismissed

because:  (1) "punitive damages are not a distinct cause of action," and (2) because Plaintiff

claims under the FMLA and NJLAD should be dismissed, so to should their claim for punitive

damages.  (Def.'s Mem. of Law in Supp. of Mot. to Dismiss Compl., at 28-29).  Plaintiffs

acknowledge that a request for punitive damages is not a distinct cause of action, but argue that

pursuant to the Punitive Damages Act, N.J. Stat. Ann. 2A:15-5.11, they must specifically request

punitive damages in the Complaint.  (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss the Compl., at

26).

Defendants argue, and this Court agrees, that the general rule is that there is no cause of

action for punitive damages.  See Urgent v. Hovensa, LLC, No. 2006/105, 2008 WL 4526677, at

*31 (D.V.I. Oct. 2, 2008) (finding that "punitive damages . . . [are] not a distinct cause of

action," and dismissing Plaintiff's punitive damages count as improperly plead); Kraus v.

Howroyd-Wright Empl. Agency, Inc., No. 06-975, 2008 WL 90325, at *17 (E.D. Pa. Jan. 8,

2008) ("[I]t is well settled that a request for punitive damages is not a cause of action in and of

itself.") (citation omitted).  However, in New Jersey, in order to receive a punitive damages

award for a claim brought under the NJLAD, a plaintiff must specifically request punitive

damages in the Complaint.  N.J. Stat. Ann. 2A:15-5.11 ("[a]n award of punitive damages must

be specifically prayed for in the complaint."); Baker v. Nat'l State Bank, 736 A.2d 462, 468 (N.J.

1999) ("In future LAD cases, courts reviewing punitive damages awards should apply both the

requirements of the PDA (with the exception of the statutory cap) and the substantive standards

of BMW v. Gore in order to ensure that any award of punitive damages bears 'some reasonable

relation' to the injury inflicted.").  Therefore, in order to preserve a request for punitive damages

under the NJPDA, a plaintiff must specifically request punitive damages in the Complaint.

This Court finds that Plaintiff improperly pled punitive damages as a separate Count in the Complaint.  However, it is important to note that Plaintiff's only "plausible" state law claim is the NJLAD age discrimination claim.  Because Plaintiff's age discrimination claim under the NJLAD includes a specific request for punitive damages, Plaintiff complied with the requirements of the NJPDA.  (Compl. ¶ 45).  Therefore, Defendants' motion to dismiss Plaintiff's separate Count for punitive damages is granted, but the Court finds that Plaintiff appropriately complied with the requirements of the NJPDA by specifically requesting punitive damages for the NJLAD age discrimination claim in Count Three of the Complaint.

## IV.   CONCLUSION

For the reasons discussed above, the Court denies Defendants' motion to dismiss.  An appropriate order shall be entered.


Dated:   11/16/2010                                        /s/ Robert B. Kugler
                                                           ROBERT B. KUGLER
                                                           United States District Judge